UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARC MITCHELL SUSSELMAN and
MARTIN H. LEAF                               No. 25-10660

     Plaintiffs,                          HON. SHALINA D. KUMAR

v                                            MAGISTRATE JUDGE
                                             ELIZABETH A. STAFFORD

MICHIGAN ATTORNEY GRIEVANCE
COMMISSION, et al.

     Defendants.

_____

**DEFENDANTS' MOTION TO DISMISS
AMENDED COMPLAINT**

 

Marla Linderman-Richelew (P55759)
Attorney for Defendants
Michigan Department of Attorney
General
Civil Rights & Elections Division
3030 West Grand Blvd, 10th Floor
Detroit, MI 48202
(313) 456-0200
lindermanrichelewm@michigan.gov

Dated: May 7, 2025

## DEFENDANTS' MOTION TO DISMISS
## FIRST AMENDED COMPLAINT

Defendants' Michigan Attorney Grievance Commission, Commissioners of the Michigan Attorney Grievance Commission[1] and Michael Goetz move to dismiss the Plaintiffs' amended complaint, and state in support of their motion:

1.    Defendants previously moved to dismiss Plaintiffs' original complaint on April 22, 2025.  (ECF No. 11).

2.    The following day, Plaintiffs filed their amended complaint, which kept all of the same claims from the original complaint but included a new claim against Defendant Goetz purporting to seek injunctive relief under *Ex Parte Young*. (ECF Nos. 13 and 14).

3.    Plaintiffs' amended complaint did not cure or avoid any of the defects in the Defendants' earlier motion to dismiss, and only introduced new problems.

4.    "The Attorney Grievance Commission is the prosecution arm of the Michigan Supreme Court" charged with "supervising the investigation of attorney

---

[1] When e-filing, Plaintiffs designated only the Commission and Mr. Goetz as Defendants and requested relief only from the Commission.  Individual commissioners are not named in the caption and are mentioned in the "Parties" section of the complaint; some Commissioners were incorrectly identified and Plaintiffs kept this error in their amended complaint.  See Fed. R. Civ. Pro. 10(a). So, this motion focuses on the Commission and Mr. Goetz, but Defendants expressly state that they are requesting this case be dismissed in full.  Unless circumstances require differentiation, the Defendants will be collectively referred to as "AGC".

misconduct, including requests for investigation and complaints against attorneys".
Mich. Ct. R. 9.108 (A) and (E)(2) (cleaned up).

5.    Mr. Goetz is the Grievance Administrator appointed by the Michigan
Supreme Court and is charged with investigating alleged misconduct of attorneys.
Mich. Ct. R. 9.109 (B)(5).

6.    Plaintiffs have filed an amended complaint with a total of five (5)
counts of constitutional violations, based on the First and Fourteenth Amendments
of the U.S. Constitution pursuant to 42 U.S.C. § 1983, requesting declaratory and
injunctive relief against the Defendants.  (ECF No. 14f.)

7.    However, Plaintiffs' claims against all Defendants are barred by
immunity under the Eleventh Amendment.

8.    While Plaintiffs attempt to avoid the Defendants' immunity by citing
to *Ex Parte Young*, their request for declaratory and injunctive relief fails as neither
declaratory relief nor retrospective relief are available under *Ex Parte Young*.  *See
Ex Parte Young*, 209 U.S. 123 (1908).

9.    However, even if Plaintiffs were to amend their complaint a second
time to comport with *Ex Parte Young*, any such amendment would be futile

because this Court lacks jurisdiction over this matter under the *Younger* abstention doctrine[2]. *Younger v. Harris*, 401 U.S. 37 (1971).

10.    Plaintiffs' claims are barred under the *Younger* abstention doctrine because their requested relief would interfere with ongoing state disciplinary proceedings that are judicial in nature, implicate important state interests and provide an adequate opportunity to raise constitutional challenges.  Id.

11.    Plaintiffs' claims are also barred by the Rooker-Feldman and collateral bar doctrines insofar as the complaint seeks to have this Court review the determinations and orders of state courts or other federal courts.

12.    Plaintiffs also fail to state claims upon which relief can be granted.

13.    Plaintiffs have failed to properly name the individual commissioners in the caption as the court rules require, so those individuals are not parties despite being identified as such in this action.  Fed. R. Civ. Pro. 10(a).

14.    Plaintiffs amended the caption to read Board of Commissioners, however, as they had already identified the Michigan Attorney Grievance Commission, this amendment did not add anything to their complaint.

---

[2] Pursuant to Mich. Ct. R. 9.126, while Plaintiffs have stated that they have complaints pending against them, their public statements do not allow Defendants to confirm or deny whether there are pending matters against Plaintiffs as "investigations are privileged from disclosure, confidential and may not be made public." Mich. Ct. R. 9.126(A).

15.     Plaintiffs have not identified any legal basis for a constitutional violation arising from the AGC's mere investigation of any alleged complaint.

16.     In fact, the Michigan Court Rules require the AGC to investigate whenever it receives notice that an attorney has been found to have filed a frivolous lawsuit.  Mich. Ct. R. 9.104; MRPC 3.1, 8.4.

17.     Recently, the State Bar of Michigan's Board of Commissioners publicly stated that:

> Efforts to undermine judicial independence—whether through threats to judicial security, calls for removal based on case outcomes, or actions that erode the public's trust in the courts— pose risks to the proper functioning of our justice system.[3]

18.     Here, the Plaintiffs are basing their constitutional claims on the same baseless allegations of antisemitism that were rejected by the courts in the Plaintiffs' prior lawsuits.

19.     Plaintiffs cannot negate the attorney grievance process based solely on suspicion that a judge or complainant was antisemitic.  Allowing such a vehicle to circumvent an investigation would only provide incentive for lawyers to engage in incivility and erode the public's trust in the judiciary.

20.     On May 2, 2025, counsel contacted Plaintiffs' counsel requesting concurrence with this motion and it was denied.

---

[3] https://www.michbar.org/News/NewsDetail/Statement-from-SBM-Leadership-on-Unprecedented-Threats-to-Rule-of-Law?nid=6113 (last accessed May 2, 2025).

5

WHEREFORE, for the reasons outlined in the accompanying brief, pursuant to Fed. R. Civ. 12(b)(1) and (b)(6), Defendants respectfully request that this Honorable Court dismiss this action in its entirety and with prejudice.

Respectfully submitted,


*/s/ Marla Linderman Richelew*
Marla Linderman Richelew (P55759)
Assistant Attorney General
Attorney for Defendants
Michigan Department of
Attorney General
Civil Rights & Elections Division
3030 West Grand Boulevard,
10th Floor
Detroit, MI 48202
(313) 456-0200
lindermanrichelewm@michigan.gov

Dated: May 7, 2025

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARC MITCHELL SUSSELMAN and
MARTIN H. LEAF                            No. 25-10660

      Plaintiffs,                       HON. SHALINA D. KUMAR

v                                         MAGISTRATE JUDGE
                                          ELIZABETH A. STAFFORD

MICHIGAN ATTORNEY GRIEVANCE
COMMISSION, et al.

      Defendants.
_____

## DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT

Marla Linderman-Richelew (P55759)
Attorney for Defendants
Michigan Department of Attorney
General
Civil Rights & Elections Division
3030 West Grand Blvd, 10th Floor
Detroit, MI 48202
(313) 456-0200
lindermanrichelewm@michigan.gov

Dated: May 7, 2025

# TABLE OF CONTENTS

Page

Table of Contents ................................................................ i

Index of Authorities ........................................................... iii

Concise Statement of Issues Presented ................................... vii

Controlling or Most Appropriate Authority............................. viii

Introduction ....................................................................1

Statement of Material Facts ..................................................2

The Michigan Supreme Court's constitutional and statutory authority to
    govern attorney conduct ...............................................2

The Michigan Supreme Court has implemented comprehensive rules
    governing attorney conduct. ...........................................2

The attorney grievance process is open to the public. ................3

Plaintiffs' allegations concerning alleged investigations of their conduct. ...............5

Court rulings finding both Plaintiffs have filed frivolous lawsuits ...........................5

Susselman's *Gerber* lawsuit ..................................................6

Leaf's *Nike* lawsuit...........................................................7

Argument.........................................................................8

I.    Plaintiffs' First Amended Complaint must be dismissed under Fed. R.
    Civ. Proc. 12(b)(1) because this Court lacks subject matter jurisdiction
    over these claims..........................................................8

    A.    The Eleventh Amendment bars all of Plaintiffs' claims. .....................8

    B.    *Ex Parte Young* does not apply to the relief requested from
        either the Commission or Defendant Goetz. ........................10

i

C.    The *Younger* abstention doctrine deprives this Court of
jurisdiction. ..................................................................................14

D.    The *Rooker-Feldman* doctrine and the collateral bar rule estop
Plaintiffs' attempts to relitigate their claims of judicial
antisemitism.................................................................................18

II.   Plaintiffs' First Amended Complaint fails to state viable legal claims
and so it must be dismissed. ...........................................................20

A.    Plaintiffs' complaint contains significant procedural
deficiencies that require dismissal. ......................................21

B.    Plaintiffs' allegations do not satisfy the required elements of a
claim under 42 U.S.C. § 1983. .............................................22

C.    Plaintiffs' First Amendment Claims Fail. ...........................22

D.    Plaintiffs' Equal Protection claims fail as a matter of law.................25

E.    Plaintiff Leaf's Due Process claims fail as a matter of law. ..............27

Conclusion and Relief Requested .............................................................29

Certificate of Service ................................................................................29

## INDEX OF AUTHORITIES

Page

**Cases**

*Abick v. Michigan*, 803 F.2d 874 (6th Cir. 1986) .......................................................9

*Albright v. Oliver*, 510 U.S. 266 (1994) ..................................................22

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................... 13, 22

*Bell Atlantic Corp v. Twombly*, 550 US 544 (2007) ......................................... 21, 22

*Bell v. Hood*, 327 U.S. 678 (1946) ................................................................8

*Bloch v. Ribar*, 156 F.3d 673 (6th Cir. 1998) ..........................................22

*Brysk v. Herskovitz*; 144 S. Ct. 183 (2023) ..................................................20

*Butcher v. Mich. Supreme Court*, No. 07-14940, 2008 U.S. Dist. LEXIS 39377 (2008) ................................................................10

*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991) ......................................................23

*Cory v. White*, 457 U.S. 85 (1982) ................................................................11

*Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365 (6th Cir. 2011) .......25

*Daily Servs., LLC v. Valentino*, 756 F.3d 893 (6th Cir. 2014) ...............................27

*Doe v. Univ of Ky*, 860 F.3d 365 (6th Cir. 2017) ...................................... 14, 16, 17

*Fears v. Kasich (In re Ohio Execution Protocol Litigation)*, 845 F3d 231 (6th Cir., 2016) ................................................................26

*Fieger v. Thomas*, 74 F.3d 740 (6th Cir. 1996) ............................................... passim

*Frost v Nessel,* Case No. 24-1132 (6th Cir., decided Apr. 17, 2025) .....................14

*Gerber v. Herskovitz*, ___F App'x___; 2023 U.S. App. LEXIS 4240 (6th Cir. 2023) ................................................................ 6, 12, 19

*Ginger v. Circuit Court for Co of Wayne*, 372 F.2d 621 (6th Cir. 1967) ...........9, 27

iii

*HP Benson Ass'n v Nike, Inc.*, ___NW2d___; 2024 Mich. App. LEXIS 9071 (Ct App, Nov. 13, 2024) ................................................................... passim

*In re Ferranti*, 504 Mich. 1 (2019) ..................................................... 18, 20

*In re Snyder*, 472 U.S. 634 (1985) .............................................................28

*In re Squire*, 617 F.3d 461 (6th Cir. 2010) ...............................................27

*Kingsley v. Brundige*, 513 F App'x 492 (6th Cir. 2013) ...........................8

*Lawrence v. Welch*, 531 F.3d 364 (6th Cir. 2008)............................ 18, 20

*Leaf v. Nike Inc*, ___F Supp 3d___; 2020 U.S. Dist. LEXIS 259694 (ED Mich, Nov. 23, 2020) ..............................................................................7

*Legal Servs Corp v. Velazquez*, 531 US 533 (2001)................................24

*Mezibov v. Allen*, 411 F.3d 712 (6th Cir. 2005)................................ 22, 23

*Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423 (1982) ................................................................ 14, 15, 16, 17

*Mikel v. Quin,* 58 F.4th 252 (6th Cir. 2023) ..................................... 10, 13

*Nair v. Oakland County Community Mental Health Authority*, 443 F.3d 469 (6th Cir. 2006) ......................................................................................8

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350 (1989)...............................................................................................14

*Paterek v. Vill. of Armada*, 801 F.3d 630 (6th Cir. 2015) .......................25

*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984)...........9

*PR Aqueduct & Sewer Auth v. Metcalf & Eddy, Inc*, 506 U.S. 139 (1993) ..... 11, 13

*Quern v. Jordan*, 440 U.S. 332 (1979) ................................................9, 11

*Sanders v. Mich Atty Discipline Bd*, ___F Supp 3d___; 2024 U.S. Dist. LEXIS 66231 (ED Mich, Feb. 21, 2024) ............................................9

*Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250 (6th Cir. 2006) ....... 25, 26

*Schlossberg v. State Bar Grievance Bd*, 388 Mich 389 (1972)................2

*Seminole Tribe of Fla. v. Florida*, 517 U.S. 44 (1996)................................................9

*Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69 (2013)........................... 14, 15

*Squire v. Coughlan*, 469 F3d 551 (6th Cir. 2006) ........................................ 15, 16

*Tonti v. Petropoulous*, 656 F.2d 212 (6th Cir. 1981) ............................... 18, 19, 20

*United States v. Ritchie*, 15 F.3d 592 (6th Cir. 1994)................................................8

*Whitfield v. Tennessee*, 639 F.3d 253 (6th Cir. 2011) ............................................11

*Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989) ........................................9

*Willner v. Committee on Character and Fitness*, 373 U.S. 96 (1963) ...................27

Younger v. Harris, 401 U.S. 37 (1971).......................................................... 12, 14

## Statutes

42 U.S.C. § 1983 ........................................................................... 8, 9, 20, 22

Mich. Comp. Laws § 600.904...................................................................................2

Mich. Comp. Laws § 600.910...................................................................................2

## Rules

Fed. R. Civ. P. 10(a)...........................................................................................3, 21

Fed. R. Civ. P. 11(b) ..............................................................................................26

Fed. R. Civ. P. 12(b)(1).................................................................................. 8, 10, 29

Fed. R. Civ. P. 12(b)(6).................................................................................. 8, 21, 29

Fed. R. Civ. P. 8(a)(3)..............................................................................................21

Mich. Ct. R. 1.101...................................................................................................2

Mich. Ct. R. 3.1.......................................................................................................5

Mich. Ct. R. 9.104(4)...............................................................................................3

Mich. Ct. R. 9.108(A)...............................................................................................3

Mich. Ct. R. 9.108(E)(2) ..................................................................3

Mich. Ct. R. 9.109(B)(5) ...............................................................3, 6

Mich. Ct. R. 9.111 ........................................................................12

Mich. Ct. R. 9.112 ..........................................................................4

Mich. Ct. R. 9.112(C)(1) ...............................................................3, 4

Mich. Ct. R. 9.114 ........................................................................12

Mich. Ct. R. 9.126 ..........................................................................1

Mich. R. of Pro. Conduct 1.0 ...........................................................2

Mich. R. of Pro. Conduct 3.1 ..................................................... passim

Mich. R. of Pro. Conduct 8.4 ........................................................3, 18

## CONCISE STATEMENT OF ISSUES PRESENTED

1.    Eleventh Amendment immunity bars Plaintiffs' claims against the Michigan Attorney Grievance Commission and state officials acting in their official capacity (collectively referred to as AGC).

2.    The *Ex Parte Young* exception to Eleventh Amendment immunity does not apply when:

   a.    Claims are directed against a state agency rather than named state officials; and/or

   b.    Plaintiffs seek declaratory relief regarding past state actions.

3.    The *Younger* abstention doctrine deprives this Court of jurisdiction over claims that would interfere with:

   a.    ongoing attorney disciplinary proceedings that involve important state interests and provide adequate opportunity to raise constitutional challenges; and/or

   b.    pending state court cases.

4.    The *Rooker-Feldman* and collateral bar doctrines bar Plaintiffs' attempt to relitigate in federal court matters previously decided against them by state and other federal courts, including determinations that their complaints were frivolous, and their allegations of judicial antisemitism were unfounded.

5.    The Plaintiffs failed to state claims upon which relief can be granted where:

   (a)    Attorneys have no personal First Amendment rights in court proceedings;

   (b)    Plaintiffs admit they lack evidence for equal protection violations; and

   (c)    Michigan's attorney grievance procedures satisfy due process requirements.

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

<u>*Constitution, Statutes, Court Rules and Rules of Professional Conduct*</u>:

Mich. Const. art VI, § 5

Mich. Comp. Laws § 600.904

Mich. Comp. Laws § 600.910

Mich. Ct. R. 9.104

Mich. Ct. R. 9.109

Mich. Ct. R. 9.112

Mich. R. of Pro. Conduct 3.1

Mich. R. of Pro. Conduct 8.4

<u>*Cases*</u>

Eleventh Amendment Immunity

    *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984)

Ex Parte Young

    *PR Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139 (1993)

Younger Abstention

    *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423 (1982)

Rooker-Feldman/Collateral Bar

    *Lawrence v. Welch*, 531 F.3d 364, 368 (6th Cir. 2008)

    *Tonti v. Petropoulous*, 656 F.2d 212, 216 (6th Cir. 1981)

Failure to State a Claim

 *Mezibov v. Allen*, 411 F.3d 712 (6th Cir. 2005)

 *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250 (6th Cir. 2006)

Underlying Cases

 *Gerber v. Herskovitz*, F App'x; 2023 U.S. App. LEXIS 4240, at \*3 (6th Cir. 2023)

 *HP Benson Ass'n v. Nike, Inc*, 2024 Mich. App. LEXIS 9071 (Ct App, Nov. 13, 2024)

## INTRODUCTION

Plaintiffs Marc Susselman and Martin Leaf amended their complaint after the AGC filed a motion to dismiss.  However, Plaintiffs' amendments do not remedy their original complaint's deficiencies, and so their case still must be dismissed.

Plaintiffs are attorneys allegedly[4] facing investigation by the Attorney Grievance Commission (AGC) after courts determined they filed frivolous lawsuits.  Both Plaintiffs previously accused judges presiding over their respective cases of antisemitism.  The Sixth Circuit Court of Appeals and the Michigan Court of Appeals expressly rejected these accusations as baseless.  Now, Plaintiffs are attempting to short-circuit the attorney grievance process in an attempt to prevent themselves from potentially being sanctioned for filing frivolous complaints.  They ask this Court to pre-emptively declare that the AGC has targeted them because they are Jewish, in violation of their First and Fourteenth Amendment rights, and to enjoin the AGC from investigating them.

Plaintiffs offer scant factual or legal support for such extraordinary relief.  Regardless, Plaintiffs' claims fail pursuant to Eleventh Amendment immunity,

---

[4] Mich. Ct. R. 9.126 prohibits the AGC from confirming or denying whether an investigation is or is not happening.  Defendants will rely on the Complaint's allegations, without agreeing to their truth, in support of this motion and brief.

*Younger* abstention, the *Rooker-Feldman* doctrine, the collateral bar rule, and a failure to state claims for which relief can be granted.

## STATEMENT OF MATERIAL FACTS

**The Michigan Supreme Court's constitutional and statutory authority to govern attorney conduct**

The Michigan Constitution and state legislature have established clear authority for attorney regulation.  The Michigan Constitution grants the Michigan Supreme Court power to establish rules governing attorney conduct and discipline (Art 6 § 5), which the Legislature has codified in Mich. Comp. Laws § 600.904 and § 600.910.  Under these powers, the Court has promulgated the Michigan Court Rules and Rules of Professional Conduct, with Mich. Ct. R. 9.104 defining violations of the rules of professional conduct as misconduct and grounds for discipline, and Mich. R. of Pro. Conduct 3.1 specifically prohibiting attorneys from filing frivolous lawsuits.  *See, e.g., Schlossberg v. State Bar Grievance Bd*, 388 Mich 389, 395 (1972).

**The Michigan Supreme Court has implemented comprehensive rules governing attorney conduct.**

Pursuant to these constitutional and statutory powers, the Michigan Supreme Court has promulgated and implemented the Michigan Court Rules and Michigan Rules of Professional Conduct.  Mich. Ct. R. 1.101 *et seq*.; Mich. R. of Pro. Conduct 1.0 *et. seq*.  Michigan Court Rule 9.104 states that "conduct that violates

the standards or rules of professional conduct adopted by the Supreme Court" is "misconduct and grounds for discipline." Mich. Ct. R. 9.104(4); *See also* Mich. R. of Pro. Conduct 8.4. Michigan Rule of Professional Conduct 3.1 prohibits a lawyer from filing a frivolous lawsuit.

**The attorney grievance process is open to the public.**

The Michigan Supreme Court designated the Attorney Grievance Commission as its "prosecution arm" to supervise attorney misconduct investigations. Mich. Ct. R. 9.108(A) and(E)(2). As Grievance Administrator appointed by the Court, Michael Goetz must review all investigation requests to determine if grounds exist to investigate an attorney's conduct. Mich. Ct. R. 9.109(B)(5), 9.112(C)(1).[5] After review, the Administrator must either dismiss the request as "inadequate, incomplete or insufficient" or forward it to the named attorney for response. Mich. Ct. R. 9.112(C)(1).

---

[5] Both the Attorney Grievance Commission and Mr. Goetz are referred to collectively as the "AGC," unless specification is necessary. Plaintiffs did not name the individual commissioners as Defendants (or identify the correct current commissioners) when filing with the Court as required by Fed. R. Civ. P. 10(a), so they are not individually referred to in this brief. The amended complaint added "Board of" before "Commissioners of the Michigan Attorney Grievance Commission," but this change neither corrected the error nor added a party, as the Attorney Grievance Commission includes the Board. Regardless, full dismissal of all Defendants is requested.

**Anyone can file a grievance against a Michigan attorney.**

The Michigan Supreme Court allows any member of the public to file a request for investigation, without limitation.  Mich. Ct. R. 9.112.  As with all requests for investigation, the Grievance Administrator must review requests for investigation from members of the public residing outside of Michigan.  *Id.*  Based on this mandate, the AGC's website explains how to file a request for investigation:

> Anyone may file a Request for Investigation against an attorney licensed by the State Bar of Michigan, or otherwise permitted by a court to practice in the state, by completing and signing the AGC's Request for Investigation form or by sending in a signed letter.[6]

**The Grievance Administrator must act on each grievance received.**

After review, the Grievance Administrator must either dismiss the investigation because the request is "inadequate, incomplete or insufficient" or send out the request to be answered by the attorney named in the request.  Mich. Ct. R. 9.112(C)(1).  Plaintiffs claim the AGC has requested responses to complaints filed by members of the public, but the AGC has not formally charged them with any rule violations.  ECF No. 13 PageID.628-629, 633, 638.

---

[6] https://www.agcmi.org/for-the-public/the-investigative-process (last accessed on 3/21/25).

**Plaintiffs' allegations concerning alleged investigations of their conduct.**

In the complaint's Preliminary Statement, Plaintiffs claim they must respond to Requests for Investigations.  ECF No. 13 PageID.588.  The attached Request for Investigations allege that Plaintiffs filed frivolous lawsuits, amongst other potential rule violations.  ECF No. 14, PageID.685-692; 846-855.  Michigan Court Rule 9.104 states that violating the Michigan rules of professional conduct constitutes grounds for discipline, while Mich. R. of Pro. Conduct 3.1 states filing a frivolous lawsuit violates the rules of professional conduct.  Mich. Ct. R. 3.1.

**Court rulings finding both Plaintiffs have filed frivolous lawsuits**

Both Plaintiffs acknowledge that the courts presiding over their lawsuits have ruled that their cases were frivolous (ECF No. 13, PageID.613-614, 622-623) and that those rulings were upheld on appeal (ECF No. 13 PageID.611, 620, 637-638).  Susselman's frivolous filing determination became final when the United States Supreme Court denied his appeal and motion for rehearing.  ECF No. 13, PageID.622-625.  The circuit court determination that Leaf's filing was frivolous has been affirmed by the Michigan Court of Appeals, with an application for leave to appeal currently pending before the Michigan Supreme Court.  ECF No. 13, PageID.638.  Neither Plaintiff denies filing the lawsuits found by the courts to be frivolous.  While both Plaintiffs allege these findings stem from antisemitism, those claims have already been rejected by other courts.

Susselman alleges that the AGC has four investigations currently in progress.  ECF No. 13, PageID.630, fn. 3.  According to Susselman, three of the four investigations are not part of this litigation.  *Id.*  As alleged in the complaint, it appears that two of those investigations concern financial impropriety.  *Id.*  The other two investigations appear to relate to the *Gerber* case, but Susselman is alleging that only one of the two investigations violates his rights.  *Gerber v. Herskovitz*, ___F App'x___; 2023 U.S. App. LEXIS 4240 (6th Cir. 2023). (Ex. A).

Leaf alleges that Mr. Goetz initiated the AGC investigation through his power to initiate investigations.  ECF No. 13, PageID.638; *See* Mich. Ct. R. 9.109(B)(5).  According to the complaint, the investigation concerns the state *Nike* case.  *HP Benson Ass'n v Nike, Inc.*, ___NW2d___; 2024 Mich. App. LEXIS 9071 (Ct App, Nov. 13, 2024) (Exhibit B).

**Susselman's *Gerber* lawsuit**

In Susselman's matter, the Sixth Circuit upheld the District Court's finding that he filed a frivolous complaint, holding, "[e]ach claim plainly lacked one or more elements required under settled precedent."  *Gerber* at *3. (Exhibit A).  The court directly addressed and rejected Susselman's claims of judicial antisemitism, finding his allegations were "grounded almost entirely in adverse rulings" which rarely constitute valid bias claims.  *Id.* at 10-11.  The Sixth Circuit concluded

6

Susselman's bias arguments "find no support in the record" noting his claims "rest on offensive, essentialist stereotypes" and "enormous logical leaps." *Id.*

**Leaf's *Nike* lawsuit**

As to Leaf, the Eastern District federal court noted Leaf's pattern of problematic litigation in his federal filing against Nike, observing he "chronically failed to serve defendants," voluntarily dismissed defendants "at an alarming rate," routinely sought to amend complaints before courts could rule on dismissal motions, and attached "large numbers of irrelevant exhibits." *Leaf v. Nike Inc*, ___F Supp 3d___; 2020 U.S. Dist. LEXIS 259694, at *12-13 (ED Mich, Nov. 23, 2020) (Exhibit C). After this federal admonishment, Leaf refiled in state court through a nonprofit he incorporated. *HP Benson Ass'n* (Exhibit B). The state circuit court judge determined the complaint to be frivolous and the Michigan Court of Appeals affirmed the finding of frivolousness. *Id.* at *10-11. The Michigan Court of Appeals panel noted that Leaf "did not attempt to overcome the fatal flaws that had led to the dismissal of his previous cases," and rejected Leaf's claims of judicial bias. *Id*. at *10-11.

## ARGUMENT

I.      **Plaintiffs' First Amended Complaint must be dismissed under Fed. R. Civ. Proc. 12(b)(1) because this Court lacks subject matter jurisdiction over these claims.**

Courts routinely decide threshold challenges to subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) before addressing merit arguments under Fed. R. Civ. P. 12(b)(6). *See Bell v. Hood*, 327 U.S. 678, 682 (1946). When a defendant asserts a facial challenge to subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), the defendant asks the Court to find that, even if the allegations in the complaint are true, the pleadings fail to give the Court subject matter jurisdiction. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). The Sixth Circuit Court of Appeals has recognized 12(b)(1) motions as appropriate vehicles for states to invoke both sovereign immunity and the *Younger* abstention doctrine. *See Nair v. Oakland County Community Mental Health Authority*, 443 F.3d 469, 476 (6th Cir. 2006); *See Kingsley v. Brundige*, 513 F App'x 492, 495 (6th Cir. 2013). (Ex. D).

A.      **The Eleventh Amendment bars all of Plaintiffs' claims.**

Plaintiffs have brought suit pursuant to 42 U.S.C. § 1983 invoking their First and Fourteenth Amendment rights. ECF No. 13. The Eleventh Amendment, however, bars private individuals from suing a state in federal court unless the state

consents or Congress abrogates the state's immunity.[7]  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44 (1996).

The Supreme Court and Sixth Circuit have definitively held that Congress, when enacting 42 U.S.C. § 1983, neither abrogated states' Eleventh Amendment immunity nor included states, their agencies, or state officials acting in their official capacity in the definition of "persons" who could be sued under § 1983. *See, e.g., Quern v. Jordan*, 440 U.S. 332, 345 (1979); *See also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  Importantly, the Sixth Circuit has specifically held that arms of the Michigan Supreme Court, such as the AGC and its Grievance Administrator, are state agencies immune from suit under the Eleventh Amendment.

The State of Michigan, the AGC, and its state officials have not consented to § 1983 suits in federal court.  *See, e.g., Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986); *Ginger v. Circuit Court for Co of Wayne*, 372 F.2d 621, 625 (6th Cir. 1967); *Sanders v. Mich Atty Discipline Bd*, ___F Supp 3d___; 2024 U.S. Dist. LEXIS 66231, at *10 (ED Mich, Feb. 21, 2024); *Butcher v. Mich. Supreme Court*,

---

[7] Plaintiff's amended complaint added Mr. Goetz to their request for relief but still fail to request *prospective* injunctive relief —making the *Ex Parte Young* doctrine inapplicable.  A full explanation regarding this doctrine's inapplicability is included in the next section.

No. 07-14940, 2008 U.S. Dist. LEXIS 39377, at *3 (2008) (Exhibit E and F—

*Sanders* and *Butcher* cases).

Therefore, all Defendants are entitled to Eleventh Amendment immunity and

respectfully request that this case be dismissed in full pursuant to Fed. R. Civ. P.

12(b)(1) as "sovereign immunity protects Defendants, full-stop" *Mikel* at 256-257.

(cleaned up).

**B.** ***Ex Parte Young* does not apply to the relief requested from either the Commission or Defendant Goetz.**

In their original motion to dismiss, the AGC explained "[w]hile Plaintiffs

may contemplate amending their complaint, any amendment would prove futile for

numerous reasons.  Were Plaintiffs to substitute Mr. Goetz's name for the

Commission's in their requests for relief, that superficial change would not

overcome the core legal barrier."  ECF No. 11, PageID.500-501.  Plaintiffs failed

to heed this caution, however, and amended their complaint to request relief

against both the Commission and Mr. Goetz.  ECF No. 13, PageID.645, 647, 650,

652, 654.  However—just as the AGC previously explained—adding Mr. Goetz

does not change the result.

Plaintiffs seek to avoid the Eleventh Amendment by attempting to frame

their claims under *Ex Parte Young* as requests for prospective relief.  *Id*.  But, in

doing so, Plaintiffs still incorrectly state the circumstances under which *Ex Parte*

*Young* applies alleging the exception applies to "a state agency".  *See, e.g.,* ECF

10

No. 13, PageID.639.  The *Ex Parte Young* exception does not apply to states or their agencies.  *PR Aqueduct & Sewer Auth v. Metcalf & Eddy, Inc*, 506 U.S. 139, 146 (1993) (citing *Cory v. White*, 457 U.S. 85, 90-91 (1982)); *Whitfield v. Tennessee*, 639 F.3d 253, 257 (6th Cir. 2011).  Therefore, the Court must dismiss Plaintiffs' claims against the Commission and Board of Commissioners, in full, pursuant to Eleventh Amendment immunity.  *See, e.g*., *Quern,* 440 U.S. at 345.

Further, this Court must also dismiss Plaintiffs' claims against Mr. Goetz because their requested relief is retrospective, not prospective.  The Supreme Court narrowly tailored the *Ex Parte Young* exception to apply only to state officers acting in their official capacity and only for prospective relief.  *PR Aqueduct & Sewer Auth*, 506 U.S. at 146.  This exception "does not permit judgments against state officers declaring that they violated federal law in the past."  *PR Aqueduct & Sewer Auth*, 506 U.S. at 146 (citations omitted).  Yet, Plaintiffs explicitly request declaratory judgment that the AGC and Mr. Goetz "have violated" their rights, and expressly use past tense phrasing.[8]  ECF No. 13, PageID.645, 647, 650, 652, 654.  Because the relief sought is decidedly backwards looking, the exception provided by *Ex Parte Young* cannot provide Plaintiffs' requested relief.  *PR Aqueduct & Sewer Auth*, 506 U.S. at 146 (citations omitted).

---

[8] The original complaint similarly used the past tense, but used the singular "has".  *See e.g.,* ECF. 1, PageID.60.

The *Ex Parte Young* exception also does not salvage Plaintiffs' claims where Goetz does not have the authority to do what Plaintiffs demand.  In short, Goetz cannot determine whether or not a disciplinary matter proceeds.

The Michigan Supreme Court's rules subject attorneys who file frivolous complaints to discipline.  Mich. R. of P. Conduct 3.1 and 8.4; Mich. Ct. R. 9.111.  Mr. Goetz can investigate attorneys who file frivolous complaints, but he does not decide if the disciplinary process proceeds.  His authority limits him to either dismissing the request for investigation or referring the matter to the Commission for review. Mich. Ct. R. 9.114.

Here—despite Plaintiffs' vigorous disagreement—multiple courts have determined that they filed frivolous complaints.  *Gerber v. Herskovitz*, 2023 U.S. App. LEXIS 4240; *HP Benson Ass'n*; 2024 Mich. App. LEXIS 9071.  For purposes of this case, as a matter of both fact and law, Plaintiffs indisputably filed frivolous complaints in their underlying lawsuits.[9]  *Id.*  Accordingly, Goetz cannot dismiss the request, he can only investigate and refer matters to the Commission for their review.  The Commission holds the authority to proceed with disciplinary

---

[9] While Leaf still has the potential of relief from the Michigan Supreme Court with his pending leave application, Susselman does not.  However, this potential does not help Leaf.  Instead, it triggers the requirement that this Court abstain from hearing this case. *Younger v. Harris*, 401 U.S. 37 (1971).

action against an attorney.  *Id.*  Therefore, Plaintiffs cannot achieve their requested relief—preventing disciplinary proceedings—by enjoining Mr. Goetz.  *Id.*

In order to obtain their requested relief, Plaintiffs would need to enjoin the Commission, which holds the power to decide on disciplinary action.  *Id.*  But, as a state agency, the *Ex Parte Young* exception does not apply to the Commission, Plaintiffs' requested relief cannot overcome the AGC's Eleventh Amendment immunity.  *PR Aqueduct & Sewer Auth*, 506 U.S. at 146.

Plaintiffs' claims are further undermined by their admission that they lack proof of antisemitic animus by the AGC.  ECF No. 13, PageID.643, 649.  Courts require complaints with well-pleaded facts that raise "more than the mere possibility of misconduct."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  Here, Plaintiffs admit having no proof that the AGC is targeting them because they are Jewish.  ECF No. 13, PageID.643, 649.  But by admitting they lack facts supporting their speculation of bias, Plaintiffs wholly fail to articulate a plausible claim that might fit under the *Ex Parte Young* exception as to Goetz.  *See Iqbal,* 556 U.S. at 679.

This Court must dismiss Plaintiffs' claims against Goetz because they are barred by the Eleventh Amendment.  *See Mikel,* at 256-257

### C.     The *Younger* abstention doctrine deprives this Court of jurisdiction.

Next, the *Younger* abstention doctrine continues to present a jurisdictional

barrier to Plaintiffs' claims.  Under the *Younger* doctrine, federal courts must

refrain from interfering with ongoing state proceedings, which further the state

court's ability to perform judicial functions, implicate important state interests, and

provide adequate opportunity to raise constitutional challenges.  *Sprint*

*Communications, Inc. v. Jacobs*, 571 U.S. 69, 77-79 (2013); *Middlesex County*

*Ethics Committee v. Garden State Bar Association*, 457 U.S. 423, 432 (1982);

*Younger v. Harris*, 401 U.S. 37 (1971); *Frost v Nessel,* Case No. 24-1132 (6th Cir.,

decided Apr. 17, 2025) (Exhibit G).  When these requirements exist, a federal court

must abstain from exercising jurisdiction absent extraordinary circumstances—and

no such extraordinary circumstances exist here.

Courts have determined that *Younger* abstention is required when state

criminal prosecutions, civil enforcement proceedings "akin to criminal

prosecution," or civil proceedings which are "uniquely in furtherance of the state

courts' ability to perform their judicial functions," such as the attorney grievance

process, are ongoing.  *Doe v. Univ of Ky*, 860 F.3d 365, 369 (6th Cir. 2017),

*quoting Sprint*, 571 U.S. at 70 and *New Orleans Pub. Serv., Inc. v. Council of City*

*of New Orleans*, 491 U.S. 350, 368 (1989); *See also Middlesex*, 457 U.S. at 432

(applying *Younger* to attorney grievance process).

14

While Plaintiffs admit *Younger* abstention is required in attorney grievance proceedings pursuant to *Middlesex*, they attempt to avoid abstention by claiming that *Younger* only attaches after formal disciplinary charges are filed, which has not occurred here.  ECF No. 13, PageID.643, 649.  Plaintiffs' attempt to carve out an exception to *Younger*, however, fails because both the U.S. Supreme Court and Sixth Circuit have previously rejected this precise argument.  *See, e.g., Middlesex County Ethics Committee,* 457 U.S. at 432-437; *Squire v. Coughlan*, 469 F3d 551, 555-56 (6th Cir. 2006); *Fieger v. Thomas*, 74 F.3d 740, 744-45 (6th Cir. 1996).

In *Middlesex,* the Supreme Court explained that the entire attorney grievance process—starting with the initial filing prompting the investigation of the attorney—triggered abstention, as the process is "uniquely in furtherance of the state courts' ability to perform their judicial functions."  *Middlesex*, 457 U.S. at 432-437.  *Sprint Communications, Inc. v. Jacobs*, 571 U.S. at 77-79 (citation omitted).  That conclusion is directly on point here.

Following the Supreme Court's holding in *Middlesex*, the Sixth Circuit has consistently confirmed that *Younger* abstention applies to attorney disciplinary proceedings—including at the investigation stage.  For example, in *Squire,* the Sixth Circuit specifically held that a grievance administrator's investigations are a judicial function for the purposes of *Younger* abstention.  *Squire,* 469 F3d at 555-56; *See also Fieger v. Thomas*, 74 F.3d at 744-45 (6th Cir. 1996).  The *Squire* court

further held that "[t]he policies of comity and federalism counsel that because [the state] has such an important interest in regulating its own bar, a state forum should have the first opportunity to review [the state's] rules of lawyer conduct and procedures for lawyer discipline." *Id.* at 556 *quoting Fieger*, 74 F.3d at 745.

The law is clear: *Younger* abstention is required at all stages of the attorney grievance process, including the investigation stage. *See, e.g., Middlesex*, 457 U.S. at 423-427*; Squire* at 555-556.  Because an attorney grievance process is subject to *Younger* abstention, the *Middlesex* factors must be applied to the facts of this case. *Doe v. Univ of Ky*, 860 F.3d at 369.

The first *Middlesex* factor requires that there be an ongoing state judicial proceeding, satisfied here by the ongoing state bar disciplinary process. *Middlesex,* 457 U.S. at 433-434; *Fieger,* 74 F.3d at 744.  Throughout their complaint, both Plaintiffs allege that grievance complaints have been filed against them and the attorney grievance investigation process continues. *See, e.g.,* ECF No. 13, PageID.588-589.  Additionally, Plaintiff Leaf alleges that he has an application for leave pending before the Michigan Supreme Court in the underlying case.  ECF No.13, PageID.638.  So, Plaintiffs' own admissions satisfy the first prong of the *Younger* abstention doctrine that state "judicial proceedings" are ongoing. *Middlesex,* 457 U.S. at 432–37; *Fieger* 74 F.3d at 744–750.

The second *Middlesex* factor requires that the proceedings involve an important state interest. *Middlesex*, 457 U.S. at 432–435; *Doe*, 860 F.3d at 369. Courts have consistently held that states, including Michigan, have "an extremely important interest in maintaining and assuring the professional conduct" of licensed attorneys and have the right to exercise extensive control over the professional conduct of attorneys. *See Middlesex,* 457 U.S. at 434; *Fieger*, 74 F.3d at 745. Again, according to Plaintiffs' own admissions, multiple courts have found that they filed frivolous lawsuits. ECF No. 13, PageID.613-614, 620-621, 623, 633, 636. The Michigan Rules of Professional Conduct makes filing a frivolous lawsuit an ethical violation subject to discipline. Mich. Ct. R. 9.104; Mich. R. of Pro. Conduct 3.1. As Michigan's courts have an important interest in prohibiting frivolous lawsuits, the second *Middlesex* prong is satisfied. *Middlesex*, 457 U.S. at 434; *Fieger*, 74 F.3d at 745.

Finally, the third *Middlesex* factor is whether the proceedings provide an adequate opportunity to raise constitutional challenges. *Middlesex*, 457 U.S. at 432; *Fieger*, 74 F.3d at 745–746. But again, the Sixth Circuit has already decided this issue, holding "the Michigan lawyer discipline proceedings afford an adequate opportunity to raise constitutional challenges" to satisfy *Younger*. *Fieger,* 74 F.3d at 746–747 (cleaned up). Thus, this case satisfies all three *Middlesex* prongs, and abstention is appropriate. *Id.*

17

Critically, Plaintiffs do not allege the AGC acted in bad faith, to harass, or in flagrant unconstitutionality; nor could they, as—if Plaintiffs' own allegations are true—the AGC would have a duty to investigate any complaint that the Plaintiffs had filed frivolous claims. Mich. Ct. R. 9.104, Mich. R. of Pro. Conduct 3.1, Mich. R. of Pro. Conduct 8.4.

Because all three *Middlesex* factors are met, Plaintiffs' claims are barred under the *Younger* abstention doctrine. This Court should dismiss this case for lack of jurisdiction on that basis. *See, e.g., Fieger*, 74 F.3d 740.

> **D.** **The *Rooker-Feldman* doctrine and the collateral bar rule estop Plaintiffs' attempts to relitigate their claims of judicial antisemitism.**

Beyond the jurisdictional barriers already discussed, the *Rooker-Feldman* doctrine and collateral bar rule provide additional grounds barring Plaintiffs' claims. The *Rooker-Feldman* doctrine prohibits lower federal courts from reviewing state judgments, reserving this power exclusively to the U.S. Supreme Court. *Lawrence v. Welch*, 531 F.3d 364, 368 (6th Cir. 2008). Similarly, the collateral bar rule prohibits filing a separate civil action to collaterally challenge prior judgments. *Tonti v. Petropoulous*, 656 F.2d 212, 216 (6th Cir. 1981); *In re Ferranti*, 504 Mich. 1, 22 (2019).

In this case, the *Rooker-Feldman* doctrine and/or the collateral bar rule applies because:

1.    Plaintiff Susselman asks this federal court to review and reject federal court determinations that he filed a frivolous complaint and that his antisemitism claims lacked merit;

2.    Plaintiff Leaf attempts to collaterally attack Michigan courts' determinations that he filed a frivolous complaint and their rejection of his antisemitism claim;

3.    Both plaintiffs seek federal intervention that would effectively undo or invalidate federal and state court judgments that found their complaints frivolous, allowing them to avoid potential consequences for unethical behavior;

4.    The only court in Michigan that has jurisdiction of attorney grievances is the Michigan Supreme Court.  Only the U.S. Supreme Court has jurisdiction to review a Michigan Supreme Court decision.

When we examine the core of this case, Plaintiffs devote about 80% of their amended complaint to rehashing why they believe the various courts based their frivolity findings on antisemitism.  The fundamental problem is that they have already made these arguments in other cases, and lost.  Ex A-*Gerber;* Ex B-*H.P. Benson*.  Plaintiffs cannot relitigate these issues here repackaged as a § 1983 case.  *Tonti,* 656 F.2d at 216.

Additionally, both the Sixth Circuit and the Michigan Court of Appeals definitively rejected Plaintiffs' arguments of judicial antisemitism, finding the claims to be utterly baseless.  Indeed, the Sixth Circuit specifically stated in its opinion that Susselman's arguments were unsupported and ill-received:

Susselman's bias arguments "find no support in the record," *Dixon v. Clem*, 492 F.3d 665, 679 (6th Cir. 2007), and are "not well received," *Gerber*, 14 F.4th at 519 n.4

19

*Gerber* at *11 (Exhibit A).  Susselman exhausted his appellate remedies by pursuing his antisemitism claims to the U.S. Supreme Court, which denied certiorari.  *Brysk v. Herskovitz*; 144 S. Ct. 183 (2023).  Susselman cannot challenge that finding in this Court.  Similarly, the Michigan Court of Appeals also held that Leaf filed a frivolous complaint and rejected his claim of judicial bias.  *HP Benson Ass'n* at *11 (Exhibit B).  Leaf's claims currently await Michigan Supreme Court review and, if unsuccessful, his court of last resort would be an appeal to the U.S. Supreme Court—not a review conducted by this Court.

At the core of their amended complaint, Plaintiffs' fundamental claim is that they had a right to assert that antisemitism motivated the courts to find their filings frivolous when representing their clients.  Those issues, however, were raised and decided in multiple other courts.  The *Rooker-Feldman* and collateral bar rules prohibit Plaintiffs from repackaging these issues under § 1983 where other courts have already rejected these arguments and found their claims baseless.  *See, e.g., Lawrence v. Welch*, 531 F.3d at 368; *Tonti v. Petropoulous*, 656 F.2d at 216; *In re Ferranti*, 504 Mich 1, 22 (2019).  So, Plaintiffs' claims should also be dismissed on these grounds.

## II.   Plaintiffs' First Amended Complaint fails to state viable legal claims and so it must be dismissed.

To survive a 12(b)(6) motion to dismiss, a complaint must include an adequate factual basis that accepted as true allows the court to reasonably infer that

the defendant is liable for the misconduct alleged. *Bell Atlantic Corp v. Twombly*, 550 US 544, 556 (2007). However, bare assertions, speculation or conclusions without further factual development, will not satisfy the requirement to state a claim for relief. *Id.* at 555-557.

Here, even if this Court were to find it has jurisdiction, Plaintiffs' claims would still fail on their merits. Plaintiffs' allegations and legal claims suffer from fatal deficiencies that require their dismissal under Fed. R. Civ. P. 12(b)(6).

### A. Plaintiffs' complaint contains significant procedural deficiencies that require dismissal.

Before addressing the substance of Plaintiffs' constitutional claims, Defendants note that Plaintiffs' complaint contains basic procedural deficiencies that warrant dismissal. First, Plaintiffs have failed to properly name the individual commissioners in the caption as the court rules require, so those individuals are not parties despite being identified as such in this action. Fed. R. Civ. P. 10(a). Second, Plaintiffs have also failed to state what relief they seek from any individual Defendant, including Mr. Goetz. Instead, they seek relief only from the Commission, which—as discussed earlier—has Eleventh Amendment immunity. Fed. R. Civ. P. 8(a)(3). Because the Court cannot provide the requested relief, the Court should dismiss Plaintiffs' First Amended Complaint. Fed. R. Civ. P. 12(b)(6).

**B.    Plaintiffs' allegations do not satisfy the required elements of a claim under 42 U.S.C. § 1983.**

The U.S. Supreme Court has recognized that § 1983 provides a method for vindicating federal rights, rather than a source of substantive rights itself. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Therefore, plaintiffs bringing a § 1983 action must first identify the specific constitutional right allegedly infringed. *Id.* Here, Plaintiffs' complaint relies on conclusory, speculative statements based on erroneous legal theories. (ECF No. 13.) Once the Court removes the erroneous legal conclusions, their complaint fails to meet the minimal requirements of *Twombly* and *Iqbal* to state a claim pursuant to 42 U.S.C. § 1983. *Bell Atl. Corp. v. Twombly*, 550 U.S. at 544; *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

To survive a motion to dismiss, Plaintiffs must properly allege that (1) defendants acted under color of state law and (2) the offending conduct deprived them of rights secured under federal law. *Mezibov v. Allen*, 411 F.3d 712, 716-717 (6th Cir. 2005) *citing Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998). While Plaintiffs arguably may satisfy the first element, their claims fail because they cannot satisfy the second requirement.

**C.    Plaintiffs' First Amendment Claims Fail.**

To properly state a First Amendment violation, Plaintiffs must allege (1) they engaged in constitutionally protected conduct; (2) defendants took an adverse action against each plaintiff that would deter a person of ordinary firmness from

22

continuing to engage in that conduct; and (3) the adverse action stemmed at least in part from the plaintiffs' protected conduct. *Mezibov* at 717 (citation omitted).

The fatal flaw in Plaintiffs' claim is that they have not engaged in protected First Amendment conduct. Courts are authorized to discipline attorneys when they violate court decorum rules and make baseless statements. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991). This authority includes investigating and bringing disciplinary actions against attorneys through attorney grievance procedures. *Id.* When an attorney believes the trial court violated constitutional rights or relevant laws, even as to themselves, their "sole remedy" lies in appealing in that case, as they are speaking for their clients, not themselves. *Mezibov* at 717–719.

The Sixth Circuit has made this point crystal clear: "in the context of the courtroom proceedings, an attorney retains no personal First Amendment rights when representing their client in those proceedings." *Id.* at 720–721. Courtrooms constitute a highly-regulated nonpublic forum, where lawyers do not engage in free speech but instead speak solely on behalf of their clients. *Id*. at 718. As the Sixth Circuit has explained:

> The courtroom is a nonpublic forum, where the First Amendment rights of everyone (attorneys included) are at their constitutional nadir. In fact, the courtroom is unique even among nonpublic fora because within its confines we regularly countenance the application of even viewpoint-discriminatory restrictions on speech.

*Mezibov* at 718.

The logical conclusion is unavoidable: even if the AGC investigated Plaintiffs for statements in their legal briefs, the investigation could not possibly violate their First Amendment rights because Plaintiffs had *no* personal First Amendment rights when they represented their clients in court. *Id.* at 717–721; *See, e.g.,* ECF No. 13, PageID.588-589. Having no First Amendment rights, this Court must dismiss Plaintiffs' First Amendment claims.

In their amended complaint, Plaintiffs claim they have standing to assert First Amendment claims on behalf of their client based on *Legal Servs Corp v. Velazquez*, 531 US 533 (2001). ECF. No. 13, Page ID #645, 654. However, an AGC process is solely about attorneys—not their clients. There is no risk to Plaintiffs' clients, nor do Plaintiffs' request relief on their behalf.

In fact, based on Plaintiffs' allegations in their complaint, their interests and their clients' interests could be in conflict in an AGC process. Currently, their clients must pay the sanctions, not Plaintiffs. An AGC process—if one occurs— could require Plaintiffs to pay their clients the amount of the sanctions to make them whole. Plaintiffs do not explain or allege how this has or might violate the First Amendment rights of their (former) clients.

And there are no clients for which Plaintiffs can bring claims in this case. According to Plaintiffs' complaint, Ms. Brysk has passed away and HP Benson Association, Inc., formed by Leaf in 2022, has never filed an annual report with the

State of Michigan.  ECF No. 13, PageID.626, Exhibit H-LARA filing.[10]  By failing

to file an annual report in 2023 or 2024, HP Benson Association, Inc.

automatically dissolved.  Mich. Ct. R. 450.2911.

> **D.    Plaintiffs' Equal Protection claims fail as a matter of law.**

Plaintiffs' equal protection claims suffer from similar fundamental legal

defects.  "The threshold element of an equal protection claim is disparate

treatment." *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir.

2006).  "To state an equal protection claim, a plaintiff must adequately plead that

the government treated the plaintiff 'disparately as compared to similarly situated

persons and that such disparate treatment either burdens a fundamental right,

targets a suspect class, or has no rational basis.'" *Ctr. for Bio-Ethical Reform, Inc.

v. Napolitano*,648 F.3d 365, 379 (6th Cir. 2011) (citation omitted).

The courts have established that "'similarly situated' is a term of art and

requires the compared party to be similar in all relevant respects." *Paterek v. Vill.

of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (citations omitted).  In this case, the

proper comparator—if any existed—would be an attorney who was found to have

filed a frivolous complaint, had a Request for Investigation filed against them by a

---

[10] This Court may take judicial notice of this State of Michigan Department of
Licensing and Regulatory Affairs record pursuant to Fed. R. Evid. 201.

member of the public, but were not Jewish and were not asked by the AGC to provide a response.  No such comparator is identified in the amended complaint.

What makes Plaintiffs' equal protection claims particularly untenable is their own express admission in their complaint that they lack any evidence that the AGC has treated them disparately.  Indeed, they openly concede that "it is not possible to prove that the Commission's issuance of a request violates their equal protection rights."  *See* ECF No. 13, PageID.643, 649.  This admission is fatal to their claim. Filing an Equal Protection complaint while admitting a lack of supporting evidence violates Fed. R. Civ. P. 11(b).  Having admitted they have no evidence to support their equal protection claims, Plaintiffs have again failed to state a claim upon which relief can be granted.  *See, e.g., Scarbrough* at 260.

Instead, Plaintiffs are asking this Court to allow them discovery to search through confidential AGC complaints regarding nonparty attorneys, in the hope that Plaintiffs can find evidence supporting their claim within those records. However, that is exactly the kind of discovery fishing expedition prohibited by federal courts.  *See e.g. Fears v. Kasich (In re Ohio Execution Protocol Litigation)*, 845 F3d 231, 236 (6th Cir., 2016).  Plaintiffs openly admit that they know of no similarly situated attorneys, and so their claim must fail and must be dismissed.

26

### E.    Plaintiff Leaf's Due Process claims fail as a matter of law.

Finally, Plaintiff Leaf's due process claims also cannot withstand scrutiny.

To establish a procedural due process claim, Plaintiff Leaf must show (1) a

protected property interest exists, (2) someone has deprived him of that protected

property interest, and (3) he did not receive adequate procedures.  *Daily Servs.,*

*LLC v. Valentino*, 756 F.3d 893, 904 (6th Cir. 2014).  Here again, Plaintiff Leaf's

complaint fails to meet these minimum requirements.

While an attorney has a right to due process before losing their law license,

Plaintiff Leaf admits that he has not lost his law license, or even faced threats of

license loss.  ECF No. 13, PageID.641, 648; See *Willner v. Committee on*

*Character and Fitness*, 373 U.S. 96, 102 (1963).  Moreover, Leaf has not been

deprived of adequate procedures.  The Sixth Circuit has explained that due process

requirements are met when an attorney has the opportunity to respond to

allegations and, if charged, can actively participate in the proceeding by providing

testimony, evidence and argument and cross-examining witnesses.  *See In re*

*Squire*, 617 F.3d 461, 467-467 (6th Cir. 2010); *In re Ginger*, 372 F.2d at 621.  The

Court specifically held that Michigan's attorney grievance process provides

adequate procedures to meet due process requirements.  *Fieger,* 74 F.3d at 746-

747.  If he were ever charged (which remains entirely unknown and speculative),

Plaintiff Leaf will have due process afforded him through the disciplinary procedures.

Plaintiff Leaf's fundamental "due process" claim that the investigation request does not specifically list which rule violations are being investigated. But this claim misses a fundamental point: an investigation does not constitute an accusation of rule violations. Rather, the letter Plaintiff submitted identifies actions under investigation as *potential* rule violations. The U.S. Supreme Court has confirmed that attorneys are responsible for knowing the rules of ethics, holding that federal courts may "rely on the attorney's knowledge of the state code of professional conduct applicable in that state court." *In re Snyder*, 472 U.S. 634, 645 n. 6 (1985). As a licensed attorney knowledgeable in Michigan's Code of Professional Responsibility, Leaf has received sufficient notice of the rules and how they might be violated.

Because Leaf has not—and cannot—allege any actual deprivation of a protected interest, or that he has not been provided adequate procedural protections, his procedural due process claim must fail as a matter of law.

## CONCLUSION AND RELIEF REQUESTED

WHEREFORE, for the reasons stated, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), Defendants respectfully request that this Honorable Court dismiss this action in its entirety with prejudice.

Respectfully submitted,

*/s/ Marla Linderman Richelew*
Marla Linderman Richelew (P55759)
Assistant Attorney General
Attorney for Defendants
Michigan Department of
Attorney General
Civil Rights & Elections Division
3030 West Grand Boulevard,
10th Floor
Detroit, MI 48202
lindermanrichelewm@michigan.gov
(313) 456-0200

Dated: May 7, 2025

## CERTIFICATE OF SERVICE

I hereby certify that on May 7, 2025, I electronically filed the above document(s) with the Clerk of the Court using the ECF System, which will provide electronic copies to counsel of record.

*/s/Marla Linderman Richelew*
Marla Linderman Richelew
Assistant Attorney General
Attorney for Defendants
P55759

29