UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARC MITCHELL SUSSELMAN
et al.,

Plaintiffs,

v.

ATTORNEY GRIEVANCE
COMMISSION et al.,

Defendants.

Case No. 25-10660
Honorable Shalina D. Kumar
Magistrate Judge Elizabeth A. Stafford

---

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO
DISMISS AND MOTION TO STRIKE (ECF NOS. 12, 18)**

---

## I.     Introduction

Plaintiffs Marc Susselman ("Susselman") and Martin Leaf ("Leaf")[1]

(collectively, "Plaintiffs"), both attorneys licensed to practice law by the

State of Michigan, sue the Michigan Attorney Grievance Commission

("ACG"), its Board of Commissioners, and Michael Goetz, in his official

capacity as the Administrator of the ACG (collectively, "Defendants"),

alleging violations of their First and Fourteenth Amendment rights. ECF

---

[1]Plaintiff Martin Leaf stipulated to dismissal of his claims with prejudice on
February 4, 2026. ECF No. 33. As such, the Court will assess defendants'
motion to dismiss solely in relation to Susselman's claims.

Page **1** of 28

Nos. 13, 14. Defendants move to dismiss Plaintiffs' complaint and to strike

Exhibit 14. ECF Nos. 11, 12, 18. The motions are fully briefed, ECF Nos.

15, 17, 21, 22, and the Court finds a hearing is unnecessary. *See* E.D.

Mich. LR 7.1(f). For the reasons discussed below, the Court grants

defendants' motions.

## II.     Factual Background

According to the allegations in the complaint, an individual ("Jane

Doe") filed a Request for Investigation with the AGC on April 30, 2024,

alleging that Susselman violated the Michigan Rules of Professional

Conduct during his representation of the plaintiffs in a case involving

protests happening in front of Beth Israel synagogue in Ann Arbor,

Michigan. ECF No. 13, PageID.627; ECF No. 14, PageID.685-92.

As an initial matter, the underlying litigation involving Susselman

warrants discussion. In 2019, Susselman learned that a group of protesters

were in front of Beth Israel synagogue holding signs with messages that

included "Jewish Power Corrupts", "Resist Jewish Power", and "No More

Holocaust Movies." *Id.* at PageID.592-93. These protests had been

occurring every Saturday morning since 2003, and Susselman felt

compelled to file suit in federal court seeking an injunction "placing

reasonable time, place and matter restrictions on [the protesters'] conduct, e.g., requiring that they be a certain distance from the synagogue property; that they be prohibited from protesting during the time period when the Sabbath service was being conducted; and that the number of protesters, and the number of signs they used, be limited to a reasonable number." *Id.* at PageID.597. Two members of the congregation, Marvin Gerber and Dr. Miriam Brysk, agreed to be plaintiffs in the lawsuit, which was filed in December 2019 and assigned to the Honorable Victoria Roberts. The complaint named five of the protestors as defendants, as well as the City of Ann Arbor for its failure to enforce its sign ordinance prohibiting the placing of signs in the public right-of-way.

Defendants in that case moved to dismiss the complaint asserting plaintiffs did not have standing to sue, and the protestors' conduct was protected by the First Amendment. Judge Roberts ultimately agreed with defendants that plaintiffs did not have standing to sue because their emotional distress did not constitute a concrete injury, and defendants' conduct was protected by the First Amendment "even if it disturbs, is offensive, and causes emotional distress." *Id.* at PageID.602. The case was dismissed.

Susselman appealed Judge Roberts' decision dismissing the case, challenging her ruling that plaintiffs' emotional distress did not constitute a concrete injury. The Sixth Circuit reversed Judge Roberts' ruling that plaintiffs did not have standing, but ruled that the protestors' signs were protected by the First Amendment. After the Sixth Circuit's decision, and prior to Susselman filing a petition for *en banc* review, Marvin Gerber terminated Susselman and retained a new attorney to file a petition for him. Both the petition filed by new counsel and the one filed by Susselman on behalf of Dr. Brysk were denied by the court, as were the subsequent petitions for writ of *certiorari* that were filed by both attorneys in the Supreme Court.

Defendants moved for attorney fees on the basis that the lawsuit was frivolous, and Judge Roberts awarded fees in the amount of $158,721.75 to be paid jointly and severally by plaintiffs and Susselman. Susselman, convinced that Judge Roberts' rulings in the case were "motivated either by anti-Semitic sentiments, or by anti-Israel, pro-Palestinian sentiments, or by both…." appealed Judge Roberts' decision. *Id.* at PageID.615. The Sixth Circuit affirmed the attorney fee award, agreeing the lawsuit was frivolous and found that the record did not support Susselman's claims that Judge

Roberts was biased against his clients. Susselman then filed a petition for *certiorari* with the Supreme Court, which was denied.

On October 18, 2022, Susselman filed a formal complaint against Judge Roberts with the Sixth Circuit. In his complaint he asserted that "by virtue of the statements in her decisions which, taken together, had the distinct appearance of being anti-Semitic and/or anti-Israel, she had violated the Canons of the Code of Conduct of United States Judges. *Id.* at PageID.625. Chief Judge Sutton dismissed Susselman's complaint on September 7, 2023. Susselman filed a petition to have his complaint be reviewed by a judicial counsel of the Sixth Circuit, and on March 26, 2024, the court issued an order affirming Chief Judge Sutton's dismissal of the complaint against Judge Roberts.

Approximately one month after the Sixth Circuit upheld the dismissal of his complaint against Judge Roberts, the operative Request for Investigation ("Request") at issue in the present case was filed against Susselman by Jane Doe, a non-party who lived out of state. The Request accused Susselman of violating several Michigan Rules of Professional Conduct based on statements he made in his appellate briefs related to the Beth Israel protests. On July 3, 2024, the AGC issued its Request pursuant

to Jane Doe's complaint. *Id.* Susselman filed his answer to the Request on August 19, 2024, and appeared before the Commission on October 23, 2024, to give a sworn statement regarding the Request. *Id.* at PageID.627-30.

Susselman takes issue with the fact that the AGC issued a Request in this instance because Jane Doe does not reside in Michigan, has never been represented by him, and was not involved in the legal proceedings or events which formed the basis for her Request. *Id.* After his appearance before the Commission, Susselman emailed Sarah Lindsey ("Lindsey"), General Counsel of the Commission, requesting the disclosure of the following information:

> I would be curious to know how many Requests for Investigation have been filed with the Michigan Attorney Grievance Commission in the last five years by individuals who do not live in Michigan, and who have never been represented by the Michigan attorney against whom the complaint was filed; how many of those were referred to the attorney in question requiring a response, and how many of such attorneys were thereafter required to provide a sworn statement. I would appreciate your providing me with this information, without divulging the identities of either the complainant(s) or the attorney(s) in question.

*Id.* at PageID.630.

Lindsey allegedly responded to Susselman's email request as follows:

> As to your request, we do not keep such statistics. Further, our investigations are privileged from disclosure and confidential (see MCR 9.126). So, I could not produce any such information to you even if we had any way to obtain it. Moreover, before formal charges are filed, the Commission has no discovery obligations. After formal charges are filed, discovery obligations are limited to what is provided in MCR 9.115.

Id. at PageID.631.

Unsatisfied with this response, Susselman filed the present suit against defendants in March 2025, with the operative amended complaint being filed on April 23, 2025. ECF Nos. 1, 13. Susselman, who is Jewish, believes that by issuing the Request, the AGC is weaponizing its authority and the Rules of Professional Conduct against Jewish attorneys. He asserts that these Requests are being used to "muzzle and penalize" him for speaking out against judicial actions he feels are anti-Semitic and are a violation of his right of free speech under the First Amendment, and of equal protection under the Fourteenth Amendment. ECF No. 13, at PageID.589. He requests both declaratory and injunctive relief. Specifically, Susselman asks the Court to enter a declaratory judgment that defendants "are violating [his] rights under the Equal Protection Clause [and right of freedom of speech under the First Amendment] by requiring him to respond to [the] Request for Investigation and considering future disciplinary action

against him for purportedly violating the Michigan Rules of Professional

conduct, and issue an injunction precluding [defendants] from proceeding

with disciplinary action against [him] based on [the] Request." *Id.* at

PageID.645-47. Susselman alleges that no formal charges have been

issued by the Commission regarding the pending Request as of the date he

filed suit in this Court. *Id.* at PageID.631.

### A. Motion to Dismiss

Defendants move to dismiss the complaint pursuant to Federal Rules

of Civil Procedure 12(b)(1) and 12(b)(6) on multiples grounds, namely: (1)

Susselman's claims are barred by immunity under the Eleventh

Amendment; (2) the Court lacks jurisdiction over this matter under the

*Younger* abstention doctrine (*Younger v. Harris*, 401 U.S. 37 (1971)); (3)

Susselman's claims are barred by the Rooker-Feldman and collateral bar

doctrines; (4) Susselman failed to state claims upon which relief may be

granted; and (5) Susselman has not identified any legal basis for a

constitutional violation arising from the AGC's investigation of alleged

complaints. *See generally* ECF No. 18.

### B. Motion to Strike

Defendants also move to strike Exhibit 14 of Susselman's complaint which contains "two alleged confidential letters from the Judicial Tenure Commission (JTC) regarding individuals who are not parties or relevant to their claims." ECF No. 12, PageID.577. Defendants claim Exhibit 14 is "immaterial, impertinent and scandalous to the affected individuals" and should be stricken from the record pursuant to Fed. R. Civ. P. 12(f).

## III.    Standard of Review

Federal Rule of Civil Procedure 12(b)(1) authorizes the Court to dismiss a claim for relief in any pleading if the Court "lack[s] subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). The Sixth Circuit characterizes the dismissal of a case "for lack of standing" as a dismissal for lack of "subject matter jurisdiction" under Rule 12(b)(1). *See Kepley v. Lanz*, 715 F.3d 969, 972 (6th Cir. 2013). The "existence of federal jurisdiction" turns "on the facts as they exist when the complaint is filed." *See Lujan v. Defs. of Wildlife*, 504 U.S. at 571 n.4, 112 S.Ct. 2130; *accord Smith v. Jeff. Cnty. Bd. of Sch. Comm'rs*, 641 F.3d 197, 206 (6th Cir. 2011) ("Standing to bring suit must be determined at the time the complaint is filed."). "Where subject matter jurisdiction is challenged pursuant to Rule 12(b)(1), the plaintiff has

the burden of proving jurisdiction in order to survive the motion." *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).

"In challenging a district court's subject-matter jurisdiction over a proceeding, a party may present a facial attack or a factual attack." *Polselli v. United States Dep't of the Treasury-IRS*, 23 F.4th 616, 621 (6th Cir. 2022), *aff'd sub nom. Polselli v. Internal Revenue Serv.*, 598 U.S. 432, 143 S.Ct. 1231, 215 L.Ed.2d 410 (2023). In a facial attack, a "movant accepts the alleged jurisdictional facts as true and questions merely the sufficiency of the pleading to invoke federal jurisdiction." *Id*. The Court may also consider "any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *See N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1249 (D.C. Cir. 2020) (collecting federal cases in the context of a Rule 12(b)(1) motion); *accord In re Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012) (same); *Carter v. HealthPort*, 822 F.3d 47, 56 (2d Cir. 2016) (same).

"In reviewing a facial attack to a complaint under Rule 12(b)(1) for lack of standing, we must accept the allegations set forth in the complaint as true while drawing all inferences in favor of the plaintiff, just as we do in

reviewing a 12(b)(6) motion to dismiss for failure to state a claim." *See Hile v. Michigan*, 86 F.4th 269, 273 (6th Cir. 2023) (cleaned up).

"To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege sufficient facts that, taken as true, state a plausible claim for relief." *Thomas v. Montgomery*, 140 F.4th 335, 339 (6th Cir. 2025) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To state a claim, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint "does not need detailed factual allegations" but must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action" to survive a motion to dismiss. *Twombly*, 550 U.S. at 556. The court "need not accept as true a legal conclusion couched as a factual allegation, or an unwarranted factual inference." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 539 (6th Cir. 2012) (internal citations and quotation marks omitted); *Ogbonna-McGruder v. Austin Peay State Univ.*, 91 F.4th 833, 839 (6th Cir. 2024).

The Sixth Circuit has explained that "[t]o survive a motion to dismiss, a litigant must allege enough facts to make it plausible that the defendant bears legal liability. The facts cannot make it merely possible that the

defendant is liable; they must make it plausible." *Agema v. City of Allegan*, 826 F.3d 326, 331 (6th Cir. 2016) (citing *Iqbal*, 556 U.S. at 678). A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555–56. "[P]lausibility occupies that wide space between possibility and probability." *Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012) (internal marks omitted). Plausibility is achieved when a court is able "to draw the reasonable inference that the defendant is liable for the misconduct alleged" and there is "more than a sheer possibility that a defendant has acted unlawfully." *See Iqbal*, 556 U.S. at 678. In assessing the plausibility of a claim, a court must "draw on its judicial experience and common sense." *See id*. at 679.

## IV.   Analysis

As described above, defendants make a number of arguments asserting that Susselman's claims should be dismissed. For the reasons discussed below, the Court will abstain from hearing this action under *Younger* and dismiss Susselman's complaint without prejudice.

### a. *Younger* Abstention

Defendants argue that the Court should abstain from deciding the issues raised by Susselman under the doctrine of *Younger v. Harris,* 401

U.S. 37 (1971), as applied in *Middlesex County Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423 (1982), and the Sixth Circuit's decision in *Fieger v. Thomas,* 74 F.3d 740 (6th Cir.1996).

The abstention doctrine, articulated in *Younger* and its progeny, requires federal courts not to interfere in ongoing state proceedings absent extraordinary circumstances. *Younger* abstention has since been applied in the context of challenges in federal court to attorney disciplinary proceedings. *See Middlesex*, 457 U.S. 423. In *Middlesex,* the Supreme Court articulated a three-part inquiry in determining that abstention was warranted in a suit brought by an attorney challenging disciplinary rules:

1) Do state bar disciplinary hearings within the constitutionally prescribed jurisdiction of the State Supreme Court constitute an ongoing state judicial proceeding;

2) Do the proceedings implicate important state interests; and

3) Is there an adequate opportunity in the state proceedings to raise constitutional challenges?

*Id.* at 432. If these prerequisites are satisfied and "so long as there is no showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate, the federal courts should abstain." *Id.* at 435.

The Sixth Circuit applied this test in *Fieger*.74 F.3d 740. In *Fieger*, a Michigan attorney filed suit against the Grievance Administrator and the Attorney Grievance Commission seeking to enjoin them from prosecuting a disciplinary complaint filed against him. Fieger argued that prosecution was a violation of his Constitutional rights. The district court did not abstain from exercising jurisdiction over the matter. *See Feiger v. Thomas* 872 F. Supp. 377, 378 (E.D.Mich.1994). Applying the test set forth in *Middlesex*, the Sixth Circuit reversed, holding that the district court should have abstained from exercising jurisdiction. In reaching its conclusion, the Sixth Circuit held that Michigan attorney disciplinary proceedings are "judicial in nature for the purposes of *Younger* Abstention," because the Board proceeded against Feiger to enforce its Rules of Professional Conduct. *Fieger*, 74 F.3d at 744.

Regarding the second prong, the Sixth Circuit held that regulating lawyers' conduct constituted "a fundamentally important state interest", reasoning that:

> Michigan, like many other states, vests exclusive responsibility for regulation of the bar with its Supreme Court. Mich. Const. art. VI, § 5 ... Because the administration of justice in Michigan and the entire Michigan judicial system is dependent upon the ethical conduct and professional proficiency of Michigan lawyers, the State has an important interest in the pending State proceedings.

*Id.* at 745. The Court also stated that "[t]he policies of comity and federalism counsel that because Michigan has such an important interest in regulating its own bar, a state forum should have the first opportunity to review Michigan's rules of lawyer conduct and procedures for lawyer discipline." *Id.* (citing Middlesex, 457 U.S. at 432–35).

Lastly, the Sixth Circuit held that the third requirement, that there be "an adequate opportunity in the state proceedings to raise constitutional challenges," was met. After reviewing the applicable rules and procedures, the Sixth Circuit concluded that the Michigan Attorney Disciplinary Rules provide "many opportunities for a lawyer to raise constitutional challenges and that there is nothing in the Court Rules or procedures that clearly bars a lawyer from doing so." *Id.* at 746–47. Additionally, the Sixth Circuit noted that a lawyer may raise constitutional challenges with the hearing panel, the Board, the Michigan Supreme Court in an application for leave to appeal, and in a complaint for mandamus. *Id.* at 746–50.

The Court finds that the Sixth Circuit's decision in *Fieger* warrants dismissal of this action. The attorney disciplinary proceedings at issue in this case—specifically, the AGC's disciplinary investigation into Susselman's alleged misconduct—are state judicial proceedings. *Id.* at 744

(holding that state disciplinary proceedings against an attorney are "judicial in nature for purposes of *Younger* abstention"); see also *Squire v. Coughlan*, 469 F.3d 551, 556 (6th Cir. 2006) (disciplinary counsel's investigations into allegations of judicial misconduct are an adjudicative function); *Middlesex*, 457 U.S. at 433–34 (filing of a complaint with an ethics and grievance committee is the initiation of a disciplinary proceeding, which is judicial in nature).

Additionally, the proceedings in this case are also "ongoing" for the purposes of *Younger* abstention. The Sixth Circuit considers state court proceedings to be ongoing if the proceedings were pending at the time the federal action was filed. *Loch v. Watkins,* 337 F.3d 574, 578 (6th Cir.2003) (citing *Zalman v. Armstrong,* 802 F.2d 199, 204 (6th Cir.1986)); *Danner v. Board of Professional Responsibility of Tennessee Supreme Court,* 277 F. App'x 575, 579 (6th Cir.2008). Here, Susselman alleges that the relevant complaint was filed against him on April 30, 2024, defendants emailed him the Request on July 3, 2024, he filed an answer to the Request on August 19, 2024, gave a sworn statement to the Commission on October 23, 2024, and then filed this lawsuit on March 9, 2025. ECF No. 13, PageID.627-31. Moreover, Sussleman's allegation that the Request against him is

"pending" and asks the Court for "an injunction precluding [defendants] from proceeding with disciplinary action[,]" demonstrates that the disciplinary proceeding was ongoing when he filed this suit. *Id.* at PageID.645. Thus, the first element for *Younger* abstention is satisfied.

Next, this case meets the second element for *Younger* abstention because it clearly involves an ongoing state proceeding that implicates important state interests. As previously stated, "[r]egulating lawyers' conduct is a fundamentally important state interest." *Fieger*, 74 F.3d at 745.

Lastly, the third requirement for *Younger* abstention is also satisfied here because Susselman has adequate opportunity in the state proceedings to raise constitutional challenges. Indeed, "[a] plaintiff must have 'an adequate opportunity in the state proceedings to raise constitutional challenges' in order to satisfy the third prong of the *Younger* abstention test.'" *Squire,* 469 F.3d at 556 (quoting *Berger v. Cuyahoga Cnty. Bar Ass'n*, 983 F.2d 718, 723 (6th Cir. 1993)). "Abstention is appropriate 'unless state law clearly bars the interposition of the constitutional claims.'" *Id.* (quoting *Fieger,* 74 F.3d at 745). The burden is on the plaintiff to show that state law barred presentation of its

constitutional claims. *American Family Prepaid Legal Corp. v. Columbus Bar Ass'n,* 498 F.3d 328, 334 (6th Cir. 2007).

Susselman asserts that he would not be able to pursue his constitutional claims before the Commission as "any constitutional claim raised by him in a prospective disciplinary proceeding would be subject to the rules of discovery under MCR 9.115." ECF No. 21, PageID.1214. Susselman's logic—which the Court deciphers to the best of its ability— seems to be as follows: (1) Susselman believes the Commission issued a Request for Investigation against him because he is Jewish; (2) he believes obtaining information regarding other Requests for Investigations will show that the Commission does not pursue "comparable Requests against attorneys who are not Jewish" and, as such, has violated his rights under the Equal Protection Clause by issuing a Request for Investigation against him"; (3) the information he seeks is considered privileged under MCR 9.115(F)(4), so the Commission will not provide it to him; and (4) without that information, "it is not possible for [him] to prove in the disciplinary proceeding that the Commission's issuance of the Request against him violates the Equal Protection Clause." ECF No. 21, PageID.1215-16. Thus, Susselman concludes that he does not "have an opportunity to present his

federal equal protection claim that the Commission's procedure violates the Equal Protection Clause in the state proceeding." *Id.* The Court is not persuaded.

In *Squire,* the plaintiff argued that she was denied the opportunity to raise her due process challenge at the pre-complaint stage of the state proceedings because she was not provided with the names of all persons contacted during the investigation against her. *Squire,* 469 F.3d at 556. The Sixth Circuit found the plaintiff's argument unavailing because it conflicted with *Middlesex,* because the plaintiff failed to raise her constitutional claim in the state disciplinary proceedings, but, instead, took her claim directly to federal district court. *See id.* at 557. Even though there was no specific procedure in place under the Ohio Bar Rules for bringing a constitutional challenge at the pre-complaint stage of the grievance process, the Sixth Circuit found it dispositive that the plaintiff had failed to show that the Disciplinary Counsel would not have considered her constitutional challenge had it been brought. *Id.*

The Court finds that Susselman does not meet his burden of showing that the state law bars presentation of his constitutional claims. Here, like the plaintiff in *Squires*, Susselman makes no allegations that he raised his

constitutional claims at any point during the investigatory proceedings. (i.e., in his Answer to the Request, at the hearing before the Commission, in his email requests with Lindsey). Contrary to Susselman's assertion that Lindsey "admitted in her email to [him] [that] any constitutional claim raised by him in a prospective disciplinary proceeding would be subject to the rules of discovery under MCR 9.115[,]" ECF No. 21, PageID.1214, and therefore barred, there are no factual allegations that he raised constitutional claims before the Commission or was told he could not do so. Instead, he alleges that he emailed Lindsey seeking information about requests filed by non-Michigan residents without Michigan counsel, whether such requests required an answer from the attorney at issue, and whether a sworn statement was required. ECF No. 13, PageID.630. Lindsey denied his request, stating that the AGC did not possess the information and that discovery rules limited its disclosures. *Id.* at PageID.631. That appears to be the end of the exchange, and nowhere does the complaint allege that Susselman raised constitutional claims.

Likewise, Susselman pleads no facts showing that the investigation proceedings denied him, or will deny him, an adequate opportunity to raise his equal protection concerns or that the discovery rules prevent him from obtaining information to support a constitutional challenge. Instead of presenting his concerns to the AGC, he took his challenges directly to federal court to circumvent the AGC's procedures and obtain the information "pursuant to discovery in federal court." ECF No. 21, PageID.1218. It is clear that Susselman did not raise his constitutional claims during the pre-complaint stage of the state proceedings, and he cannot show that defendants would have refused to consider them. *See Squire,* 469 F.3d at 557; *Berger*, 983 F.2d at 723 (holding that *Younger* abstention was appropriate because the "plaintiffs had the opportunity to present their constitutional claims in their answer to the [disciplinary] complaint against them"); *see also Fieger,* 74 F.3d at 747 ("Similar to the Plaintiff in *Middlesex,* Fieger has failed to demonstrate that members of the hearing panel and the Board, the majority of whom are lawyers, would have refused to consider a claim that the rules which they were enforcing violated federal constitutional guarantees.") (citation omitted).

Moreover, the Sixth Circuit has assessed Michigan lawyer disciplinary proceedings at great lengths and concluded that such proceedings provide "many opportunities for a lawyer to raise constitutional challenges and there is nothing in the Court Rules or procedures that clearly bars a lawyer from doing so." *Fieger,* 74 F.3d at 746–47. Indeed, the Sixth Circuit has stated that it is "confident that the Michigan Supreme Court takes constitutional challenges to its regulations very seriously." *Id.*  at 749. Thus, the third and final requirement for *Younger* abstention is also satisfied.

Having determined that all three requirements for *Younger* abstention are met here, the Court will dismiss the complaint unless Susselman can show that one of the exceptions to *Younger* applies, such as bad faith, harassment, or flagrant unconstitutionality of the statute or rule at issue. *Id.* (citing *Trainor v. Hernandez,* 431 U.S. 434 (1977)). Abstention is also contraindicated where there is "an extraordinarily pressing need for immediate federal equitable relief[.]" *Kugler v. Helfant,* 421 U.S. 117, 125 (1975). Courts have generally interpreted the exceptions to *Younger* narrowly. *Gorenc v. City of Westland,* 72 F. App'x 336, 339 (6th Cir. 2003) (citing *Zalman v. Armstrong,* 802 F.2d 199, 205 (6th Cir.1986)). Plaintiffs

bear the burden of demonstrating the existence of one of the exceptions to *Younger* abstention. *See Squire,* 469 F.3d at 552 (citation omitted).

Although Susselman does not plead any of the *Younger* exceptions, he now argues that "the exception to such abstention applies where the attorney is precluded from advocating his constitutional defenses in the state proceeding." ECF No. 21, PageID.1217. The Court fails to see how Susselman can show the applicability of an exception with a cursory statement wholly unsupported by legal authority. Nevertheless, the Court can, at most, construe this argument as asking for the final exception to *Younger* abstention to apply. That exception—"an extraordinary pressing need for immediate equitable relief"—is reserved for situations where "the federal court concludes that the state proceedings are inadequate because there is no state forum for the plaintiff's constitutional claims, *Gerstein v. Pugh,* 420 U.S. 103, 107–08 (1975), or the state judicial or administrative officers have a conflict of interest or are biased, *Gibson v. Berryhill,* 411 U.S. 564, 576–78 (1973)." *Goodwin v. Cnty. of Summit, Ohio*, 45 F. Supp. 3d 692, 704 (N.D. Ohio 2014) (citation omitted). As previously discussed, the state proceedings here afford Susselman the opportunity to raise his

constitutional defense, and there is no showing or allegation that the defendants are biased. This exception does not apply.

Accordingly, the Court finds that it should abstain in this matter under *Younger*. The attorney disciplinary proceedings at issue in this case are ongoing state judicial proceedings and those proceedings implicate an important state interest and provide an opportunity to raise constitutional challenges. "A district court deciding to abstain under *Younger* has the option of either dismissing the case without prejudice or holding the case in abeyance." *Eidson v. State of Tennessee Dept. of Children's Services,* 510 F.3d 631, 638 (6th Cir.2007) (quoting *Coles v. Granville,* 448 F.3d 853, 866 (6th Cir.2006). In *Fieger,* the Sixth Circuit remanded the action to the district court with instructions that the complaint be dismissed without prejudice. *Fieger,* 74 F.3d at 750–751. Given the ongoing state proceedings and Susselman's opportunity to raise his constitutional challenges in the ongoing state court proceedings, this Court finds it is appropriate to dismiss Susselman's claims without prejudice.

**b. Motion to Strike**

Finally, defendants move to strike Exhibit 14 of Susselman's complaint.[2] *See* ECF No. 12. Exhibit 14 consists of two allegedly confidential letters from the Judicial Tenure Commission (JTC) regarding Requests for Investigation into non-party judges. As such, defendants contend that the exhibit should be struck pursuant to Fed. R. Civ. P. 12(f) because it is "immaterial, impertinent and scandalous to the affected individuals who have no bearing on this case and no knowledge of this harmful filing." *Id.* at PageID.577.

Rule 12(f) of the Federal Rules of Civil Procedure provides that on a motion of a party, the court may strike from a pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Motions to strike under Rule 12(f) are addressed to the sound discretion of the trial court, but are generally disfavored." *Graves. v. Mahoning Cty.*, 2011 WL 3703950, at *2 (N.D. Ohio Aug. 23, 2011) (citing *Ameriwood Indus. Int'l Corp. v. Arthur Andersen & Co.*, 961 F. Supp. 1078, 1083 (W.D. Mich. 1997)). "Striking pleadings is considered a drastic remedy to be used sparingly and only when the purposes of justice so

---

[2] The initial complaint and the operative amended complaint both contain the same at-issue exhibit. *See* ECF No. 1, PageID.242-49; *see also* ECF No. 14, PageID. 829-36.

require." *Id.* (citing *Brown v. Williamson Tobacco Corp. v. United States*, 201 F.3d 819, 822 (6th Cir. 1953)). "However, within this framework, the court retains 'liberal discretion' to strike filings as it deems appropriate." *Id.* (citing *Nationwide Ins. Co. v Cent, Mo. Elec. Co-op., Inc.*, 278 F.3d 742, 748 (8th Cir. 2001)). Nevertheless, "motions to strike are disfavored and granted only where the allegations are clearly immaterial to the controversy or would prejudice the movant." *Kuhlman v. City of Cleveland*, 2023 WL 2652171, at *2 (N.D. Ohio Mar. 23, 2023) (quoting *Frisby v. Keith D. Weiner & Assocs. Co., LPA*, 669 F. Supp. 2d 863, 865 (N.D. Ohio 2009)). The Sixth Circuit has previously indicated that "the action of striking a pleading should be sparingly used by the court," "resorted to only when required for the purposes of justice," and "only when the pleading to be stricken has no possible relation to the controversy." *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953).

The Court will strike Exhibit 14 of the complaint and amended complaint, ECF No. 1, PageID.242-49; ECF No. 14, PageID. 829-36. Plaintiffs assert that the exhibit supports Leaf's claim that the judge (who they claim wrote the letter) had improper bias against Leaf, and that the AGC's investigation into him is without merit. *See* ECF No. 15,

Page **26** of **28**

PageID.863-64 ("The Attorney Grievance Commission is seeking to discipline Mr. Leaf based on his claim, in legal briefs, that [the] Judge['s] conduct and comments had the appearance of being anti-Semitic. The Commission is claiming that this allegation does not find support in the record . . . . The letters accordingly support Mr. Leaf's contention that [the] Judge['s] use of a double standard corroborates his claim that the judge's statements and conduct have been motivated by sentiments of anti-Semitism."). But at this point in the proceedings, the exhibit is clearly immaterial to the controversy because Leaf has since dismissed his claims with prejudice. Indeed, plaintiffs state in their briefing that the exhibit was attached to the complaint solely in relation to Leaf's claims against defendants.

Therefore, the Court will exercise its discretion to strike Exhibit 14 from plaintiffs' complaints because the exhibit contains information that is clearly immaterial to, and no longer has any possible relation to, the controversy between the remaining plaintiff, Susselman, and the defendants.

## V.    Conclusion

Accordingly, the Court **GRANTS** defendants' motion to dismiss (ECF No. 18), and plaintiff's complaint is **DISMISSED WITHOUT PREJUDICE.**

The Court also **GRANTS** defendants' motion to strike Exhibit 14 of the complaints (ECF No. 12).  Because Susselman failed to properly file the exhibits to his complaint and amended complaint, the Court **STRIKES** ECF No. 1 and ECF No. 14 in their entirety and **ORDERS** Susselman to refile them without their Exhibit 14.

     **IT IS SO ORDERED.**


Date: February 20, 2026              <u>s/Shalina D. Kumar</u>
                                          Shalina D. Kumar
                                          United States District Judge